**In re ANTITRUST GRAND JURY INVESTIGATION.**

**Crim. No. 80–00075A–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 19, 1980.

Eliot Norman, Asst. U. S. Atty., Richmond, Va., for plaintiff.

Barry S. Simon, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

WARRINER, District Judge.

This case came on for hearing upon the government's motion to show cause why Henry S. Branscome, Inc. (hereinafter "the Company") should not be held in contempt of Court for its alleged failure to produce documents responsive to a subpoena *duces tecum* issued on June 19, 1980, by a grand jury sitting in the Eastern District of Virginia, Richmond Division. During a hearing on September 11, counsel made proffers of fact, upon which the Court has made its findings of fact. The facts relevant to this issue can be briefly summarized.

On June 24, the subpoena *duces tecum* was served upon a representative of the Company. Paragraph 11 of that subpoena directed the Company to produce, in relevant part:

"Each document (a) that discusses or constitutes an agreement, understanding, or communication (whether direct or indirect) between Respondent and a competitor concerning (i) a bid or the determination or negotiation thereof, (ii) the price of construction services, (iii) bidding procedures, or (iv) the allocation of customers, territories, or jobs, or (b) that evidences a meeting, discussion, or other communication among competitors for a purpose specified in (a), *supra.*"

Counsel for the Company informed the government that the Company's business relations are not compartmentalized into contacts with "competitors" and "customers," and that many companies that could be considered "competitors" in bidding for projects overseen by the Virginia Department of Highways and Transportation are also "customers" in that they may rent or supply equipment to each other, subcontract work to each other, etc. Counsel agreed that Paragraph 11 of the subpoena would be modified in light of that fact, and that documents in a "bona fide" "customer" re-

lationship would not be subject to production under Paragraph 11.

The Company designated an employee as custodian of records for purposes of complying with the subpoena, and on July 22, 1980, the Company produced documents responsive to the subpoena. The custodian of records stated, in his affidavit, that he had "personally conducted and supervised the compliance by said company with said subpoena *duces tecum*. To the best of my knowledge and belief, the documents furnished constitute fully complete compliance with said subpoena *duces tecum* and constitute all the company's documents in its possession, custody or control that fall within the terms of said subpoena. . . ." No documents were produced responsive to Paragraph 11, as modified.

Subsequently, counsel for the Company—who also represent five individual Company employees—informed the government that there were documents which were not on their face responsive to the modified subpoena, but which could be considered responsive in light of information disclosed in privileged communications with individual Company employees. Counsel stated that individual employees could assert their Fifth Amendment privilege with respect to the act of identifying and segregating documents that were not responsive to a subpoena on their face, and that the communication of that information to counsel was a privileged attorney–client communication.

Disagreeing with that position, the government sought an order to show cause why the Company should not be held in contempt for failure to produce the documents referred to by counsel. The government declined to accept the Company's offer to produce all documents responsive to the original language of Paragraph 11 of the subpoena, which would have included the documents which were not facially responsive to the "modified" subpoena.

Despite the government's rejection of that proposal, the Company, on advice of counsel, identified the documents responsive to the original language of Paragraph 11 and produced those documents to the grand jury on September 11, 1980. Those documents were accepted by the government. That production included all documents that were not on their face responsive to the "modified" subpoena, but which were not in fact what they purported to be.

█ On the afternoon of September 11, 1980, the Court heard arguments on the respective positions of the government and the Company. Upon consideration of those arguments and the briefs submitted by counsel, I have concluded that the Company at all times acted upon advice of counsel, and that that advice was reasonable. Accordingly, I find that Respondent has not acted contumaciously, and therefore decline to hold Respondent in contempt.

█ After the Court found that Respondent would not be held in contempt, the government pressed the point that Respondent should nevertheless be forced to segregate from among those documents responsive to the original language of Paragraph 11, all documents which were not on their face responsive to the "modified" subpoena, but which could be considered responsive in light of information possessed by individual company employees. I deny that request, placing primary reliance on *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). In *Fisher*, the Supreme Court stated, in language pertinent to this case:

"A subpoena served on a taxpayer requiring him to produce an accountant's workpapers in his possession without doubt involves substantial compulsion. But it does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought. Therefore, the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by its own compelled testimonial communications. *Schmerber v. California* [384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908], *supra*; *United States v.*

*Wade* [388 U.S. 218, 87 S.Ct. 222, 18 L.Ed.2d 1149], *supra;* and *Gilbert v. California* [388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178], *supra.* The accountant's workpapers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him. Furthermore, as far as this record demonstrates, the preparation of all of the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else. The taxpayer cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else.

The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. United States,* 354 U.S. 118, 125 [77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225] (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof. In light of the records now before us, we are confident that however incriminating the contents of the accountant's workpapers might be, the act of producing them—the only thing which the taxpayer is compelled to do—would not itself involve testimonial self-incrimination." 425 U.S. at 409–11, 96 S.Ct. at 1580–1581 (footnote omitted).

As the Supreme Court stated in *Fisher,* the production of documents not otherwise privileged would not "ordinarily" compel an individual to "restate, repeat or affirm the truth of the contents of the document sought." In this case, what the government seeks would require individuals to affirm the truth of the contents of the documents sought—in fact, it would require an individual employee to state that the documents were "false" in order to identify them as responsive to the subpoena.

As in *Fisher,* the elements of compulsion are clearly present. Moreover, in this case, unlike the situation in *Fisher,* the act of selecting documents responsive to the modified subpoena would also be "testimonial" and "incriminating", since it requires an employee to reveal that particular documents are not "bona fide." The only way that the government could obtain information that documents not facially responsive to the subpoena are in fact responsive would be to compel individuals to testify against themselves. The act of segregating documents in these circumstances is the functional equivalent of oral testimony. However, the government cannot compel that testimony consistent with the command of the Fifth Amendment.

Nor can counsel be required to make the requested identification. As stated previously, counsel represented the employees involved individually, and information communicated from those individual employees to counsel falls within the ambit of the attorney–client privilege. Thus, the employees have a Fifth Amendment privilege to avoid identifying documents that are not facially responsive to the subpoena; testimony about the communication of that information to counsel cannot be compelled consistent with the attorney–client privilege.

The Court, therefore, denies the government's alternative motion to require Respondent to segregate, from among those documents produced to the grand jury, those documents that would be responsive to the "modified" subpoena. This ruling is without prejudice to the government's right to serve Respondent with an additional, more specific subpoena.

Order accordingly.