**UNITED STATES of America and Richard J. Collery, Special Agent, Internal Revenue Service, Petitioners,**

v.

**C. Edward CRANS, as Manager of the Inter-County Savings Bank, Respondent,**

**Johanan Vigoda, Taxpayer-Intervenor.**

**Misc. No. 404.**

United States District Court, N. D. New York.

April 6, 1981.

George H. Lowe, U. S. Atty., N.D.N.Y., Albany, N. Y., for petitioners.

Silets & Martin, Ltd., Chicago, Ill., for taxpayer-intervenor; Harvey M. Silets, Shelly B. Kulwin, Chicago, Ill., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Senior District Judge.

The United States of America and Richard J. Collery, Special Agent of the Internal Revenue Service (IRS), filed a petition in this proceeding on November 17, 1980, for an order directing the respondent, C. Edward Crans, as Manager of the Inter-County Savings Bank, to show cause why said respondent should not be compelled to obey the IRS summons served upon him. This proceeding was commenced pursuant to Title 26 U.S.C. § 7402(a), (b) and § 7604(a), (b). The administrative summons was issued under the authority of 26 U.S.C. § 7602.

The petitioner, Special Agent Collery, is conducting an investigation of the personal federal income tax liabilities of Johanan Vigoda for the calendar years 1974, 1975, 1976, and 1977. Pursuant to his investigation, Special Agent Collery caused an administrative summons to be served upon Respondent Crans. This summons directed him to appear, testify, and produce for examination certain books, records, papers, and other data.

In accordance with 26 U.S.C. § 7609(a)(1)(B), the petitioner furnished the taxpayer, Johanan Vigoda with notice of the summons directed toward respondent Crans, as Manager of the Inter-County Savings Bank. And pursuant to his legal right under 26 U.S.C. § 7609(b)(2), the taxpayer gave notice to respondent Crans not to comply with the summons. The taxpayer's motion to intervene pursuant to 26 U.S.C. § 7609(b)(1) was granted on January 5, 1981 by order of this court.

Intervenor-taxpayer Vigoda has filed an answer to the government's petition to enforce the summons. Vigoda asserts two affirmative defenses against the enforcement of the summons with the request for a hearing.

The underlying facts that form the basis of the first affirmative defense are as follows: Vigoda states that on January 11, 1980, Special Agent Collery and another agent of the IRS came to his home in Woodstock, New York. Vigoda claims that at this time he was extremely fatigued, ill and confused as to the tax matters the agents questioned him about. He claims that he believed that the agents wanted to discuss the tax liabilities of one of Vigoda's clients, who was being investigated at that time. It is uncontested that at this meeting the IRS agents gave *Miranda* warnings to Vigoda.

The intervenor further claims that the agents interrogated him while he was in this fatigued, ill, and confused condition. Due to this mental and physical condition, it is asserted he was: (1) unable to resist the interrogation; (2) unable to understand or assert his Fifth Amendment rights; (3) incapable of making a "knowing and intelligent" waiver of his Fifth Amendment rights, thereby causing the interrogation to be in violation of his constitutional right against self-incrimination.

As a product of this alleged illegal interrogation, these agents became aware of information regarding bank accounts and records of Vigoda with Inter-County Savings Bank, whose manager is the respondent herein. The intervenor claims that absent the illegal interrogation, the information necessary to serve the summons in the above matter would not have been obtained by the IRS agents. The intervenor asks:

that the instant summons on the Inter-County Bank should therefore be quashed, since it is a direct product of the illegal interrogation of the Intervenor's rights under the Fifth Amendment . . . and the enforcement thereof would be an abuse of the processes of this court.

(Intervenor's Answer ¶ 21).

The intervenor's second affirmative defense is that confidential information was improperly disclosed to Special Agent Collery internally by another IRS agent in violation of 26 U.S.C. § 6103. The intervenor claims that the illegal disclosures made

to the IRS led directly to the issuance of the present summons to the respondent. Intervenor Vigoda contends that due to this illegal disclosure the summons should be quashed.

The petition and accompanying affidavits of Special Agent Collery state that the testimony and records sought are not in the possession of the IRS; that the testimony and material sought is essential to a correct determination of the tax liabilities of the individual taxpayer; and, that no recommendation for prosecution has been made by the Service to the Department of Justice.

After oral argument and consideration of the memoranda of law filed by the attorneys for the parties herein, it is my judgment that the summons in the present proceeding should be enforced for the reasons stated hereinafter.

## DISCUSSION

■ Under I.R.C. § 7602, the IRS has long had broad power "to issue administrative summonses to examine any books, papers, records or other data that may be relevant or material to an inquiry into compliance with the internal revenue laws." *United States v. New York Telephone Co.*, 644 F.2d 953, 955 (2d Cir., 1981). In a summons enforcement proceeding commenced pursuant to § 7602, the IRS must prove:

> that the investigation will be conducted pursuant to a legitimate purpose, that the information sought is not already within the commissioner's possession, and that the administrative steps . . . have been followed. . . . It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. . . . The burden of showing an abuse of the court's process is on the taxpayer . . .

*United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). The above minimal requirements are all that must be shown by the government. Thereafter, the burden shifts to the taxpayer to disprove these elements or demonstrate that the enforcement would be an abuse of the court's process. *Id.*, at 58, 85 S.Ct. at 255. In this action, the taxpayer-intervenor, Vigoda, contends that if the summons directed to the third-party bank is enforced, the court's process will be abused due to alleged constitutional and statutory violations that have occurred during the investigation.

In order to carry the burden to quash the summons, the intervenor seeks a decision in his favor on the issue of whether a Fifth Amendment violation is a defense in a IRS summons enforcement proceeding. Although this issue was presented well by counsel during oral argument and in their memorandum of law, this issue in my opinion need not be and is not reached by ruling in this decision. It is my judgment that no violation of the Fifth Amendment occurred under the prevailing circumstances which would lead to the denial of the enforcement of the summons, if in fact, that defense is available in such a proceeding. The intervenor relies upon *United States v. Bank of Commerce*, 405 F.2d 931 (3rd Cir. 1969), to support his request for a hearing on alleged violation of the Fifth Amendment right. As the government points out in its brief, the reasoning and ruling in that decision is not supported by authoritative and controlling case law that followed. *See United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United States v. Luz-Estella Alvarez-Porras*, 643 F.2d 54 (2d Cir., 1981); *United States v. Davis*, 636 F.2d 1028, 1035, n.4 (5th Cir. 1981); *United States v. Bonnell*, 483 F.Supp. 1070, 1082 (D.Minn.1979). It would not seem that the claimed Fifth Amendment violation made herein if considered and accepted as meritorious would defeat and quash this routine IRS summons at this non-trial stage.

At the outset, it is noted that the agents involved here visited Vigoda in his home in order to investigate his civil tax liability. At that time and at the present time it is clear and uncontroverted that no recommendation for criminal prosecution has been made by the Service. Taxpayer-intervenor Vigoda, *recovering from a case*

of the flu at the time, admits in the submission that these agents read him his *Miranda* rights before they began questioning him. Yet he claims that his statements and the fruits of those statements should be suppressed because his will was overborne and he was too sick and confused to assert his privilege against self-incrimination before answering the agents' questions.

■ The position the intervenor takes in this case is similar to the position of the taxpayer in *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). In *Beckwith*, the Supreme Court held that statements made by petitioner-taxpayer to IRS agents during the course of a non-custodial interview in a tax investigation were held admissible against him in the ensuing criminal tax fraud prosecution even though he was not given warnings required by *Miranda*. The taxpayer in that case contended that the starting point for the criminal prosecution brought against him was his own statements and disclosures made to IRS agents, while at his own home without the benefit of *Miranda* warnings. The Supreme Court refused to recognize this questioning at home as a custodial interview. The Court conceded that these statements may well have been the start of the criminal investigation, ruling however, that his Fifth Amendment rights were not violated, and admission of these statements into evidence was proper. *Beckwith v. United States, supra*, 425 U.S. at 347, 96 S.Ct. at 1616. *See United States v. Scott*, 590 F.2d 531 (3rd Cir. 1979); *United States v. Robson*, 477 F.2d 13 (9th Cir. 1973); *United States v. Engle*, 458 F.2d 1017 (8th Cir. 1972). With this in mind, it is my judgment that any information obtained from Vigoda at the interview in his home would be admissible in this present summons enforcement proceeding. Upon entering Vigoda's home, the men identified themselves as special agents of the IRS. Vigoda was aware of the agents' purpose to obtain information whether it was in regard to his tax liability or to someone else's. Furthermore, at the time of the questioning he was neither under arrest nor was his freedom restricted in

any significant way. It is clear that he was not coerced or forced to say anything against his will at that time. It would also be somewhat inconceivable that he would be unable to understand the warnings of his constitutional rights that were told to him at that time. Since no Fifth Amendment violation occurred, it follows there is no abuse of the court's process to enforce this summons.

■ The summons in this particular proceeding would be enforced even if its issuance had been due to the use of self-incriminating statements. In essence, Vigoda contends that these records are tainted because knowledge of them was obtained through a violation of the Fifth Amendment. However, it is settled law that the Fifth Amendment privilege against self-incrimination is a personal one and cannot be invoked to protect someone else or someone else's records. *United States v. Couch*, 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973). In these circumstances, the privilege against self-incrimination should not be extended to protect documents which might have been "tainted" and which might be incriminating in further tax proceedings. The Fifth Amendment privilege adheres to the person, not to information held by someone else that may incriminate that person. *Id.*, at 328, 93 S.Ct. at 615. The intervenor's contention that the bank records are tainted due to the alleged illegal interrogation is also questionable. According to the petitioner, the filed income tax returns of Vigoda with IRS do report interest income from the Inter-County Savings Bank which would provide an independent basis for the issuance of the summons.

■ The intervenor's second affirmative defense is not a sufficient basis to quash the summons herein. The intervenor claims that there was an illegal disclosure in violation of 26 U.S.C. § 6103, and since the illegal disclosure led to the issuance of the summons herein, the summons should be quashed. The intervenor does not set forth the manner in which the supposed illegal disclosure took place or what information was disclosed. Furthermore, there is nothing set forth by the intervenor to indicate that the disclosure violated § 6103. This

section deals with the confidentiality and disclosure of tax returns and return information, and as a general rule, this type information is non-disclosable. However, there are exceptions to this rule. Under § 6103(k)(6), disclosure of tax return information for tax administration purposes by internal revenue officers and employees is allowed. This section reads in part:

An internal revenue officer ... may in connection with his official duties relating to any ... civil or criminal tax investigation ... disclose return information to the extent necessary in obtaining information ... or with respect to the enforcement of any other provision of this title.

Title 26 U.S.C. § 6103(k)(6) (1980). This section seems to be applicable in this situation. Since it appears on these facts that no violation of this section has occurred, the summons will not be quashed on these grounds.

In summary, for the reasons set forth above, it is my judgment that the petition to enforce the IRS summons against respondent must be and hereby is granted. The request by both parties for costs to be awarded against each other is denied. Accordingly, an enforcement order is to be submitted by the government attorney for the petitioner.

It is so Ordered.