UNITED STATES of America and Mary Jane Sciascia, Revenue Agent, Petitioners-Appellees,

v.

Dr. Martin FOX, Respondent-Appellant.

No. 1380, Docket 83–6055.

United States Court of Appeals, Second Circuit.

Argued June 9, 1983.

Decided Oct. 19, 1983.

Richard E. Timbie, Washington, D.C. (Scott D. Michel, Caplin & Drysdale, Washington, D.C., Denise G. Shekerjian, Stillman, Friedman & Shaw, New York City, of counsel), for respondent-appellant.

Stephen A. Dvorkin, Asst. U.S. Atty., S.D.N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Leona Sharpe, Thomas D. Warren, Asst. U.S. Attys., S.D.N.Y., New York City, of counsel), for petitioners-appellees.

\* Honorable Irving Hill, United States District Judge for the Central District of California, sitting by designation.

1. Section 7602 of the Internal Revenue Code of 1954 (IRC) provides:

Before OAKES and MESKILL, Circuit Judges, and HILL,\* District Judge.

MESKILL, Circuit Judge: 

The federal tax structure is based on a system of self-reporting which relies on "the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability." *United States v. Bisceglia,* 420 U.S. 141, 145, 95 S.Ct. 915, 918, 43 L.Ed.2d 88 (1975). We have recognized repeatedly that the Internal Revenue Service is "indispensable" to the administration of the revenue laws, *United States v. Harrington,* 388 F.2d 520, 525 (2d Cir.1968); *see United States v. Arthur Young & Co.,* 677 F.2d 211, 218 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983), and that it can investigate a taxpayer's return "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Powell,* 379 U.S. 48, 57, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964) (quoting *United States v. Morton Salt Co.,* 338 U.S. 632, 642–43, 70 S.Ct. 357, 363–364, 94 L.Ed. 401 (1950)). However, we have also recognized that "[e]ven a routine tax investigation is a situation in which answers to questions by an IRS agent might tend to incriminate, and thus Fifth Amendment rights apply to such answers." *United States v. O'Henry's Film Works, Inc.,* 598 F.2d 313, 317 (2d Cir.1979). In this appeal we consider whether the Fifth Amendment's protection against self-incrimination allows a sole proprietor to shield his proprietary and financial records from compelled disclosure to a government agency. We hold that it does.

## BACKGROUND

In January 1982 the Internal Revenue Service (IRS) commenced a civil audit to determine the joint tax liability of Dr. Martin Fox and his wife Tamar Fox for the tax year 1979.[1] On January 28, 1982 the IRS

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of

issued an administrative summons requiring Dr. Fox to appear, testify and produce the following documents:

1. All books and records, invoices, statement[s] and other documents pertaining to the operation of the sole proprietorship of Dr. Martin Fox for the period January 1, 1979 to December 31, 1979.
2. All savings account passbooks, brokerage account statements, 1099s, checking account statements, deposit slips, and cancelled checks for the taxpayer[s] Martin and Tamar Fox.
3. All evidence verifying contributions claimed as a deduction on Schedule A of the 1979 tax return of the taxpayer[s], Martin and Tamar Fox.

J.App. at 6. Dr. Fox refused to produce the summoned documents, invoking his Fifth Amendment privilege against self-incrimination. He also threatened to invoke the Fifth Amendment in response to any questions asked.

The IRS petitioned the United States District Court for the Southern District of New York for an order enforcing the summons.[2] On November 3, 1982 Judge Sofaer issued an opinion and order which set out his preliminary analysis of the issues.

*United States v. Fox,* 549 F.Supp. 1362, 1368 (S.D.N.Y.1982). First, he stated that the Fifth Amendment "directly" protects the contents of an individual's private records *only* if they are "purely personal" and "essentially nonbusiness" documents. *Id.* at 1365. He ordered Fox to submit *in camera* an affidavit detailing which documents were "personal." *Id.* at 1368. Second, Judge Sofaer held that the IRS summons might "indirectly" violate Fox's Fifth Amendment privilege in two ways: (a) by forcing him to produce and therefore acknowledge the existence of incriminating records heretofore unknown by the government, and (b) by forcing him to produce records "written by the taxpayer," and thereby implicitly authenticate them. *Id.* at 1366–67. He ordered the government to file a detailed summons establishing the extent of its knowledge of the existence of Fox's records and ordered Fox to submit *in camera* an affidavit identifying which documents he had "actually written." *Id.* at 1368. Third, Judge Sofaer *sua sponte* raised the issue of whether any or all of the summoned records were "required records" within the meaning of *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), and therefore not entitled to

---

any internal revenue tax, or collecting any such liability, the Secretary is authorized—
  (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
  (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
  (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
*See United States v. New York Tel. Co.,* 644 F.2d 953, 955 (2d Cir.1981).

2. IRC § 7402(b) provides:
  (b) *To enforce summons*

If any person is summoned under the internal revenue laws to appear to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.
IRC § 7604(a) provides:
(a) *Jurisdiction of district court*
  If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.
The district court's order enforcing the IRS summons is appealable as a final order. *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964); 9 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 110.13[2](2) (2d ed. 1983).

Fifth Amendment protection. 549 F.Supp. at 1364. He ordered both parties to brief this issue.[3]

After considering the parties' additional submissions, Judge Sofaer issued his second opinion and order on January 24, 1983 holding that (1) none of the summoned documents were personal and therefore they did not merit direct protection; (2) based on the government's affidavit, the revenue agent knew of the existence of at least some records in each of the three classes of summoned documents and therefore Fox was "entitled to no fifth amendment protection based on the notion that his act of production will amount to testimony of the existence or possession of the summoned documents;" and (3) Fox may assert the privilege against self-incrimination on the basis of authentication only as to documents bearing his own handwriting. *United States v. Fox,* 554 F.Supp. 422, 425 (S.D.N.Y.1983). He concluded that "producing the summoned documents will not constitute compelled testimonial communication under the fifth amendment," *id.* at 424, and thus the government is entitled to production of all summoned documents except for those records actually bearing Fox's handwriting. *Id.* The court reserved decision with respect to the handwritten documents and requested that Fox submit an affidavit explaining how their production might incriminate him.

On February 4, 1983 Fox submitted the handwritten documents plus an explanatory affidavit and simultaneously moved for a stay and reconsideration of the court's January 24 order requiring production of all other summoned records. On February 11, 1983 the district court denied the motion for reconsideration and, after an *in camera* examination of the handwritten documents, ruled that they must also be produced. *United States v. Fox,* M–18–304 (S.D.N.Y. Feb. 11, 1983) (unpublished order), *repro-*

*duced in* J.App. at 93. The court granted Fox's application for a stay of the January 24 and February 11 orders pending appeal.

## DISCUSSION

The constitutional privilege against self-incrimination is "essentially a personal one, applying only to natural individuals." *United States v. White,* 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). It cannot be invoked by a collective entity or its representatives. In *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), the Supreme Court drew "a bright line between organizations which have a 'recognizable juridical existence apart from [their] members,'" such as corporations or partnerships, and "those which do not," such as sole proprietorships. *In re Grand Jury Empanelled (Colucci),* 597 F.2d 851, 859 (3d Cir.1979) (quoting *In re Grand Jury Investigation,* 483 F.2d 961, 962 (3d Cir.1973), *aff'd, Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974)). Thus, an attorney who possesses partnership records in his capacity as a representative of the partnership cannot claim the personal protection of the Fifth Amendment privilege. *Bellis v. United States,* 417 U.S. at 88, 94 S.Ct. at 2183. Similarly, a corporate executive cannot invoke the Fifth Amendment to prevent compulsory disclosure of incriminatory corporate records. *Wilson v. United States,* 221 U.S. 361, 385, 31 S.Ct. 538, 546, 55 L.Ed. 771 (1911); *see also McPhaul v. United States,* 364 U.S. 372, 380, 81 S.Ct. 138, 145–146, 5 L.Ed.2d 136 (1960) (member of Civil Rights Congress); *Rogers v. United States,* 340 U.S. 367, 371–72, 71 S.Ct. 438, 440–441, 95 L.Ed. 344 (1951) (member of Communist Party); *United States v. White,* 322 U.S. 694, 704, 64 S.Ct. 1248, 1254, 88 L.Ed. 1542 (1944) (member of labor union). Although a partner's or an executive's production of records might compel the partnership or corpora-

---

**3.** On appeal, the government has not relied on the "required records" exception to the Fifth Amendment protection against self-incrimination as a basis for enforcing the summons. *See generally* Tax Division, Department of Justice, Manual for Criminal Tax Trials 103 (1973) (the

"Department has not embraced" the required records doctrine in tax cases); R. Fink, *Tax Fraud,* § 10.04[2], at 10–17 (1980). Because the district court did not rely on this ground as a basis for its decision, we see no need to consider it.

tion to bear witness against him, it does not compel the partner or executive to bear witness against himself.

■ A sole proprietor, however, stands on different constitutional grounds. Because a sole proprietorship has no legal existence apart from its owner, the compelled disclosure of a sole proprietor's private or business papers implicates his privilege against self-incrimination.

It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony .... The privilege applies [as well] to the business records of the sole proprietor or sole practitioner ....

*Bellis v. United States,* 417 U.S. at 87–88, 94 S.Ct. at 2182–2183. *See also In re Doe,* 711 F.2d 1187, 1190–91 (2d Cir.1983) (applying privilege to sole practitioner's disclosure of patient records).

■ Dr. Fox is a sole proprietor. He contends that the enforcement of the summons would result in compelled testimonial self-incrimination violative of the Fifth Amendment.[4] On the authority of *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), we agree that Dr. Fox cannot be compelled to incriminate himself through production of his business and personal records.[5]

I. *Fifth Amendment Protection Against Compelled Incriminatory Testimony*

In *Fisher,* the IRS issued a summons to the taxpayer's attorney for production of tax returns that had been prepared for the taxpayer by an independent accountant. The Court held that the attorney's production of the tax returns would not violate the taxpayer's Fifth Amendment privilege because an accused is entitled to Fifth Amendment protection only where he is "compelled to make a testimonial communication that is incriminating." 425 U.S. at 408, 96 S.Ct. at 1579 (emphasis in original). The Court's decision grounded the Fifth Amendment privilege against document production on the "communicative aspects" of the act of production. It concluded that compliance with a document subpoena may require "incriminating testimony" in two situations: (1) if the existence and location of the subpoenaed papers are unknown to the government, then the taxpayer's compelled production of those documents "tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer," *id.* at 410, 96 S.Ct. at 1581; *see In re Katz,* 623 F.2d 122, 126 (2d Cir. 1980); *United States v. Praetorius,* 622 F.2d 1054, 1062–63 (2d Cir.1979), *cert. denied,* 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980); *In re Grand Jury Subpoena Duces Tecum (John Doe),* 466 F.Supp. 325, 326–27 (S.D.N.Y.1979); and (2) where the taxpayer's production of documents may "implicitly authenticate" the documents and in so doing provide a link in the chain of incrimination, 425 U.S. at 412–13, 96 S.Ct. at 1581–1582; *see United States v. Beattie,* 522 F.2d 267, 270 (2d Cir.1975) (Friendly, J.) ("[a] subpoena demanding that an accused produce his own records is ... the equivalent of requiring him to take the stand and

---

**4.** Prior to receiving Fifth Amendment protection, Dr. Fox must demonstrate that disclosure of the summoned documents might tend to incriminate him. *Hoffman v. United States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–819, 95 L.Ed. 1118 (1951). However, we will assume that the summoned documents are incriminating for the purpose of determining what legal standard governs application of the Fifth Amendment privilege against self-incrimination.

**5.** Dr. Fox also contends that because the subpoenaed records are his "private papers," they are privileged from production under *Boyd v.*

*United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Because we hold today that *Fisher* prohibits compelled production of the records if the act of production would be incriminatory, we need not address this argument. It should be noted that the Supreme Court has granted certiorari in a case involving a virtually identical *Boyd* claim. *See United States v. Doe,* ── U.S. ──, 103 S.Ct. 1890, 77 L.Ed.2d 281 (1983) (summarized at 51 U.S.L.W. 3424), *granting cert. to In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327 (3d Cir. 1982).

admit their genuineness"), *remanded,* 425 U.S. 967, 96 S.Ct. 2163, 48 L.Ed.2d 791 (1976), *modified on remand,* 541 F.2d 329 (2d Cir.1976); *People v. Defore,* 242 N.Y. 13, 27, 150 N.E. 585, 590 (1926) (Cardozo, J.) ("A defendant is 'protected from producing his documents in response to a *subpoena duces tecum,* for his production of them in court would be his voucher of their genuineness.' There would then be 'testimonial compulsion (citation omitted).' ").

Fox contends that enforcement of the IRS summons would require him to perform both incriminating testimonial acts; he would be forced (1) to acknowledge the existence of records of which the government was unaware, and (2) to implicitly authenticate the records as his own. We agree.

### A. Existence of Documents

In *In re Katz,* 623 F.2d 122 (2d Cir.1980), a grand jury was empanelled to investigate the unlicensed exportation of arms. Katz, an attorney, was subpoenaed to testify and to produce "all documents" relating to companies owned or controlled by his client, Benjamin Jamil. We recognized that Katz's response to this subpoena would contribute "to the sum total of the Government's information" because "if the corporations [were] somehow linked to the scheme under investigation by the grand jury, production may well be highly incriminatory of appellant." *Id.* at 126. Consequently, we reversed the district court's order requiring Katz to comply with the subpoena and remanded to the district court to determine whether Jamil's Fifth Amendment privilege prevented the government from compelling his attorney to produce the subpoenaed records.

▇ Applying the *Fisher/Katz* standard to the documents in this case, the district court ordered the IRS to provide "as detailed a summons as possible, with a view toward establishing the extent of the government's knowledge of the existence and taxpayer's possession of the summoned documents." 549 F.Supp. at 1368. In response, the IRS identified three bases for

its belief that Dr. Fox possesses the summoned documents: Dr. Fox's tax returns for the 1979, 1980 and 1981 tax years; the revenue agent's experience as an auditor of professional tax returns; and a transcript of third-party payments to the Foxes during the year 1979 (interest, dividend and insurance payments as listed on 1099 and 1087 forms). The district court held that the tax returns, coupled with the agent's explanatory affidavit, demonstrated that the government knew (1) that Fox was a physician operating as a sole proprietor who possessed records detailing his business operations, J.App. at 42; (2) that Fox had bank and brokerage accounts, J.App. at 45; and (3) that Fox had "receipts, cancelled checks, or other written evidence" to support the charitable deductions listed on his 1979 return, J.App. at 44. The court concluded that "[t]hese papers demonstrate that the existence and taxpayer's possession of the *three categories* of summoned documents ... to the point that admitting their existence and possession does not rise to the level of testimony under the fifth amendment." 554 F.Supp. at 425 (emphasis added). We disagree.

First, we note that the revenue agent's affidavit stated: "In the experience of your affiant as an auditor of professional tax returns, income records of a medical practice are maintained in one of four possible ways .... It is impossible to believe that records of fees received do not exist." J.App. at 42. We believe that the government's awareness of the practices of other taxpayers has nothing to do with the proper focus of this inquiry—*i.e.,* what the act of production would reveal to the IRS about *this* taxpayer. *See In re Grand Jury Empanelled March 19, 1980,* 680 F.2d 327, 335 n. 12 (3d Cir.1982), *cert. granted sub nom. United States v. Doe,* —— U.S. ——, 103 S.Ct. 1890, 77 L.Ed.2d 281 (1983).

Second and more important, merely because the IRS obtained some information from the face of Fox's tax returns does not mean that the government now knows enough to eliminate any possibility that Fox's production would constitute an in-

criminating testimonial act. For example, the IRS has no way of knowing from the face of Fox's return whether he has records to support all of his claimed business deductions; whether he possesses records that reflect unreported taxable income; or whether he possesses records that evidence possible crimes committed in the course of his sole proprietorship. Similarly, the mere fact that a tax return reveals on its face that a taxpayer had "at least one bank account" or "brokerage account" does not give the IRS any information about whether the taxpayer has records of other bank accounts showing income that was never reported in his return.

■ Therefore, the IRS summons for *all* books and records of a sole proprietorship and *all* bank and brokerage records of a taxpayer may compel the taxpayer to add to the "sum total of the Government's information." The inference we draw from this broad-sweeping summons is that the government is attempting to compensate for its lack of knowledge by requiring Dr. Fox to become the primary informant against himself. *See In re Grand Jury Proceedings (McCoy & Sussman),* 601 F.2d 162, 170 (5th Cir.1979); *In re Antitrust Grand Jury Investigation,* 500 F.Supp. 68 (E.D.Va. 1980); *In re Grand Jury Subpoena Duces Tecum (John Doe),* 466 F.Supp. 325, 327 (S.D.N.Y.1979); *cf. United States v. Schlansky,* 709 F.2d 1079, 1083 (6th Cir.1983) ("There is no serious question as to the existence or location of the documents; the summons is quite specific."). It is precisely this sort of fishing expedition that the Fifth Amendment was designed to prevent. Accordingly, we hold that the enforcement of this summons would result in compelled testimonial communication.

### B. *Implicit Authentication*

■ In *Fisher* the Supreme Court stated that "[t]he 'implicit authentication' rationale appears to be the prevailing justification for the Fifth Amendment's application to documentary subpoenas." *Fisher v. United States,* 425 U.S. at 412 n. 12, 96 S.Ct. at 1582 n. 12. Implicit authentication occurs when an individual who receives a summons demanding production of documents complies with the summons and thereby implicitly testifies that he owns or at least possesses the documents. In many cases, the "official's testimony that he received them [the documents] from the individual who prepared and possessed them, will provide a necessary link to incriminating evidence contained in the documents." *In re Grand Jury Proceedings United States (Martinez),* 626 F.2d 1051, 1055 (1st Cir.1980) (citing *United States v. Plesons,* 560 F.2d 890, 893 (8th Cir.1977), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977)). Therefore, the potential for self-incrimination through "implicit authentication" implicates Fifth Amendment protection.

The district court, relying solely on our opinion on remand in *United States v. Beattie,* 522 F.2d 267 (2d Cir.1975), *remanded,* 425 U.S. 967, 96 S.Ct. 2163, 48 L.Ed.2d 791, *modified on remand,* 541 F.2d 329 (2d Cir. 1976), ruled as a matter of law that the taxpayer could only claim the privilege with respect to records that he personally prepared. We disagree.

In *Beattie* a taxpayer who learned that he was the subject of a criminal investigation for tax fraud acquired all of the documents used by his accountant in preparing his past tax returns. When the government subpoenaed those documents, he refused to comply, relying on the Fifth Amendment. We rejected the taxpayer's "implicit authentication" argument because the documents were prepared by the accountant and compliance with the subpoena would not force the taxpayer to authenticate the documents as his own. However, we also held that the taxpayer could protect copies of all correspondence between himself and his accountant:

> Insofar as the summons requests copies of any communications between Beattie and Robeson, it should not be enforced, and we modify the order to so provide. But there is no such invasion of a private inner sanctum when a taxpayer is asked to produce the work product of an independent contractor, possession of which

he has obtained in an effort to forestall the compulsory production the Government could have had if the contractor had retained them. *Boyd* was not a case where buyer had persuaded a seller to turn over the seller's own records.

*United States v. Beattie,* 522 F.2d at 279 (footnote omitted).

The Supreme Court granted certiorari and remanded for reconsideration in light of *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). On remand we modified our prior opinion and ordered that the subpoena be enforced with respect to each document, except for letters written by the taxpayer to his accountant:

> By producing his own letters to the accountant, the taxpayer would be authenticating them as fully as if he were producing his retained copies. We do not read *Fisher* and *Kasmir* as detracting from the principle that the Fifth Amendment protects against compulsory production of a paper written by an accused with respect to his own affairs . . . .

*United States v. Beattie,* 541 F.2d at 331.

In this case, Judge Sofaer viewed *Beattie* as limiting *Fisher's* authentication standard to papers bearing the handwriting of the person summoned. He misconstrued *Beattie.* We never stated in *Beattie* that only a taxpayer's handwritten documents are potentially protected under the Fifth Amendment. Rather, the crux of our decision was that because the taxpayer's compelled production of letters to his accountant would implicitly authenticate them as his own, his act of production was deserving of Fifth Amendment protection. Similarly, compelled production of records in a taxpayer's possession—even records prepared by a third party—implicitly authenticates the records as the taxpayer's own and thus violates the Fifth Amendment.

It is true that *Fisher,* as well as *Beattie,* held that the taxpayers could not shield from disclosure documents in their possession that were prepared by a third party. In *Fisher,* those documents were an accountant's work papers. But a taxpayer would not authenticate his accountant's work papers merely by producing them. His act of production might demonstrate his belief that the papers were the ones sought in the subpoena, but this would be immaterial. In order to introduce the papers into evidence, the government would have to show that the papers were what they purported to be, the accountant's estimates. The taxpayer who did not make those estimates would not be attesting that the accountant did make them simply by producing the accountant's papers.

Similarly, the subpoena in *Beattie* requested production of the accountant's letters. Beattie's mere production of those letters would not have shown that the accountant actually wrote the letters. Thus, in neither *Fisher* nor *Beattie* would production of the third party's work product have been testimony as to its identity and genuineness.

Here, however, the sole proprietor's production of his own papers would clearly be testimony as to their identity and genuineness. In this case, who prepared the records is far less important than the fact that they are Fox's records. What the government would need for authentication here is exactly what Fox would provide by production—an admission that the subpoenaed documents are records pertaining to his business or to the finances and claimed deductions of him and his wife. *See In re Grand Jury Proceedings United States (Martinez),* 626 F.2d at 1056; *In re Grand Jury Subpoena (Kent),* 646 F.2d 963, 968–69 (5th Cir.1981). In *Beattie* we recognized that:

> A subpoena demanding that an accused produce his own records is taken to be the equivalent of requiring him to take the stand and admit their genuineness . . . . [I]f an accused is forced to produce his own papers, with the consequence that the prosecutor can put them in evidence without further ado, he is in effect forced to take the stand if he wishes to dispute or explain them.

*United States v. Beattie,* 522 F.2d at 270 (citations omitted). If Dr. Fox delivers the summoned records to the IRS, that act, in

and of itself, may be sufficient to authenticate the records at a subsequent criminal trial against him. *See United States v. Brown,* 688 F.2d 1112, 1116 (7th Cir.1982); *United States v. Plesons,* 560 F.2d 890, 893 (8th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 506, 54 L.Ed.2d 452 (1977). We believe that Dr. Fox's compliance with the summons would implicitly authenticate the documents as his own and thereby provide a link in a chain of evidence that might incriminate him.

■ We therefore conclude that the district court erred in ruling that none of the taxpayer's records are potentially privileged under the "existence of documents" prong of Fifth Amendment analysis and that only records bearing the taxpayer's own handwriting are potentially privileged under the "implicit authentication" mode of analysis.[6]

## II. *Are the Summoned Documents Incriminatory?*

■ We have found that under the *Fisher* mode of analysis, appellant's Fifth Amendment privilege against self-incrimination will *potentially* shield all of his proprietary papers, financial documents and evidence of charitable deductions from compelled disclosure to the IRS. However, Fox has yet to make a showing as to how disclosure of the summoned documents might tend to incriminate him: "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified . . . ." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *see In re Gilboe,* 699 F.2d 71, 74–75 (2d Cir.1983) (witness asserting privilege may be required to demon-

strate "real and substantial risk" that answers may tend to incriminate); *In re Katz,* 623 F.2d 122, 126–27 (2d Cir.1980) (remanding for determination of privilege through *in camera* inspection of subpoenaed documents); *Klein v. Smith,* 559 F.2d 189, 200 (2d Cir.), *cert. denied,* 434 U.S. 987, 98 S.Ct. 617, 54 L.Ed.2d 482 (1977); *see also Zurcher v. Stanford Daily,* 436 U.S. 547, 561–62 n. 8, 98 S.Ct. 1970, 1979–1980 n. 8, 56 L.Ed.2d 525 (1978) ("The burden of overcoming an assertion of the Fifth Amendment privilege . . . is one which prosecutors would rarely be able to meet in the early stages of an investigation."). We remand to the district court for a consideration of whether the production of the proprietary documents, financial records and evidence of charitable deductions would tend to incriminate Dr. Fox. *See Fisher v. United States,* 425 U.S. at 410, 96 S.Ct. at 1581.

We also reverse the district court's finding that the documents actually written by Fox must be disclosed. We recognize that the district court's factual findings should not be disturbed unless they are clearly erroneous. *In re Grand Jury Proceedings United States (Martinez),* 626 F.2d 1051, 1053 (1st Cir.1980). However, we believe that the district court erred in focusing on the handwritten documents apart from the rest of appellant's summoned records. The court never had the opportunity to consider *in camera* the incriminating character of *all* of the summoned documents taken together. Instead, the court focused only on the small segment of handwritten documents in isolation. It is conceivable that the incriminating character of the handwritten documents could not be readily discerned without reference to other records. Given the incomplete record before us, we reverse the district court's order with respect to the

---

6. Our decision today should not severely hamper the legitimate investigatory activities of the IRS. In fact, the government could have obtained many of the summoned records from sources other than Dr. Fox. *See, e.g., United States v. Crans,* 517 F.Supp. 863 (N.D.N.Y. 1981) (bank records summoned). Moreover, if the government has probable cause to believe that appellant has committed a crime, it can seize the documents pursuant to a duly limited search warrant. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). Although we recognize that IRS summonses are accorded an exceptional amount of deference, *see United States v. Davis,* 636 F.2d 1028, 1036 (5th Cir.), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320 (1981), we do not believe that effective enforcement of the tax laws should take precedence over constitutional protections.

handwritten documents and remand for consideration of the incriminating character of *all* of the summoned documents.

Reversed and remanded.