**In re GRAND JURY SUBPOENA DUCES TECUM DATED NOVEMBER 13, 1984 (John Doe, Petitioner).**

**No. 84 CV 4756.**

United States District Court,
E.D. New York.

July 26, 1985.

Lawrence S. Goldman, New York City, for petitioner.

Edward A. McDonald, U.S. Dept. of Justice, Organized Crime Strike Force, Bruce Maffeo, Sp. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Petitioner, one of two partners in a consulting firm, moves to quash a grand jury subpoena *duces tecum*. Fed.R.Crim.P. 17(c). On March 25, 1985, this Court held that the traditional rule of *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), was not an automatic bar to petitioner's assertion of the Fifth Amendment in opposition to the subpoena. The Court left open, however, pending consideration of the act of production doctrine, whether the claim of privilege covers the particular documents sought. *In re Grand Jury Subpoena Duces Tecum Dated November 13, 1984*, 605 F.Supp. 174 (E.D.N.Y. 1985).

The Court directed the parties to submit briefs on the applicability of the act of production doctrine. In addition, the government filed an *ex parte* affidavit detailing its knowledge of petitioner's activities. Petitioner in turn submitted to the Court documents that would be responsive to the subpoena. The Court has reviewed all of these submissions; for the reasons developed below the motion to quash is granted in part.

### Discussion

The challenged subpoena is directed to petitioner as custodian of partnership records, and commands production of books and records from January 1, 1981 to the present, including cash receipts and disbursements, general ledgers, cancelled checks, bank statements and partnership tax returns. In its previous opinion this

Court held that the contents of these records were not privileged, 605 F.Supp. at 178 (citing *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ), but that the act of producing them might be.

■ One aspect of petitioner's motion requires little discussion. To the extent the subpoena is directed to partnership tax returns, which petitioner is required by law to keep, the motion to quash is denied. *In re Doe*, 711 F.2d 1187, 1191 (2d Cir.1983). I turn now to petitioner's contention that the act of production doctrine protects against disclosure of the other subpoenaed documents.

The physical act of complying with a documentary subpoena may constitute compelled testimony in two situations. First, "if the existence and location of the subpoenaed papers are unknown to the government, then ... compelled production of those documents 'tacitly concedes the existence of the papers demanded and their possession or control by the [person subpoenaed].' " *United States v. Fox*, 721 F.2d 32, 36 (2d Cir.1983) (quoting *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976) ). Second, a "taxpayer's production of documents may 'implicitly authenticate' the documents and in so doing provide a link in the chain of incrimination." *United States v. Fox, supra*, 721 F.2d at 36; *see Fisher v. United States, supra*, 425 U.S. at 412–13, 96 S.Ct. at 1581–82.

### A. Existence and Location

■ If the government can demonstrate with reasonable particularity that it knows of the existence and location of subpoenaed documents, no privilege to refuse production on the first ground exists. *United States v. Fox, supra*, 721 F.2d at 37; *United States v. Praetorius*, 622 F.2d 1054, 1063 (2d Cir.1979), *cert. denied*, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980). The government's pre-production knowledge must be sufficient "to eliminate any possibility that ... production would constitute an incriminating testimonial act." *United States v. Fox, supra*, 721 F.2d at

37–38. A blunderbuss subpoena, such as that issued here, creates an inference that the government is seeking to compensate for its lack of knowledge by compelling petitioner "to become the primary informant against himself." *Id.* at 38.

■ Notwithstanding the broad subpoena and the inference arising therefrom, the government's *ex parte* affidavit establishes that much is known about this petitioner's activities. The government is aware that he keeps a set of partnership books, and is aware of two bank accounts—one in the name of the partnership and the other in the name of petitioner and his wife. Petitioner cannot refuse to comply with the subpoena on the ground that the existence and location of the documents are unknown. *Cf. United States v. Fox, supra*, 721 F.2d at 37 (proper inquiry is what government knows about *this* taxpayer's practices, not about taxpayers in general).

### B. Implicit Authentication

Although the existence and location of the subpoenaed documents are known, petitioner may still refuse to produce them if by so doing he would "implicitly authenticate" them for the government. "Implicit authentication occurs when an individual who receives a summons demanding production of documents complies with the summons and thereby implicitly testifies that he owns or at least possesses the documents." *United States v. Fox, supra*, 721 F.2d at 38. If a government official will one day be able to testify that he knows the documents in question belong to petitioner because petitioner produced them when asked, then by that very act of production petitioner will have made a self-incriminating testimonial admission. His act of production will provide a necessary link to incriminating evidence contained in the documents by removing the government's need to authenticate them by other means. *Id.*

Conversely, when the government can authenticate the documents without relying on any act by petitioner, then production by petitioner does not implicate the Fifth

Amendment. The Supreme Court illustrated this in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), when it enforced an IRS summons requiring a taxpayer to produce tax workpapers in his possession but prepared by his accountant:

> As for the possibility that responding to the subpoena would authenticate the workpapers, production would express nothing more than the taxpayer's belief that the papers are those described in the subpoena. The taxpayer would be no more competent to authenticate the accountant's workpapers or reports by producing them than he would be to authenticate them if testifying orally. The taxpayer did not prepare the papers and could not vouch for their accuracy. The documents would not be admissible in evidence against the taxpayer without authenticating testimony. Without more, responding to the subpoena in the circumstances before us would not appear to represent a substantial threat of self-incrimination.

*Id.* at 412–13, 96 S.Ct. at 1581–82 (footnotes and citations omitted).

■ With respect to most of the documents demanded by the subpoena, petitioner's production of them will not constitute authentication implicating the Fifth Amendment. For example, production of the partnership's cancelled checks will not provide the government with authentication that would otherwise be lacking; the checks are self-authenticating. Fed.R. Evid. 902(9). Additionally, the bank statements demanded were not prepared by petitioner; and the government can authenticate them through the testimony of bank personnel without relying upon any testimonial act petitioner may perform by producing the statements.

■ As to partnership ledgers, cash receipts, and records of disbursements, however, a different situation exists. Compelled production of these documents would provide the government with just what it needs for authentication—"an admission [by petitioner] that the subpoenaed documents are records pertaining to his business." *United States v. Fox, supra,* 721 F.2d at 39. Petitioner may invoke his Fifth Amendment privilege to block production of these records if he can establish that the act of production would be incriminatory.

## C. Would Producing the Subpoenaed Documents Be Incriminatory?

The Fifth Amendment does not protect against all compelled testimony, but only against that which is self-incriminatory. Petitioner bears the burden of establishing that the act of producing these documents would be incriminatory. Mere assertion of the privilege is not sufficient; the potential for self-incrimination must be a "real danger." *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 480, 92 S.Ct. 1670, 1676, 32 L.Ed.2d 234 (1972); *United States v. Edgerton*, 734 F.2d 913, 921 (2d Cir.1984).

■ Petitioner in this case has been told that he is the target of a grand jury investigation. He also knows that agents from the F.B.I. and the Customs Service have been asking third persons about his business activities. Finally, it is not without significance that the government has declined to confer immunity upon petitioner—even limited solely to the act of production—in order to compel compliance with the subpoena. *See* 18 U.S.C. §§ 6002–03. Based on the foregoing, I conclude petitioner has demonstrated that by complying with the subpoena, petitioner creates a real danger of incriminating himself. *Zicarelli v. New Jersey State Commission of Investigation, supra; see In re Katz*, 623 F.2d 122, 126–27 (2d Cir.1980) ("real and substantial risk").

### Summary

For the foregoing reasons, petitioner's motion to quash the subpoena is granted in part. Petitioner is directed to deliver the following subpoenaed documents to the United States Attorney: (1) partnership tax returns; (2) all cancelled checks of the partnership; and (3) bank statements reflecting transactions in Citibank Account No.

11959997: In all other respects, petitioner's motion to quash is granted.

SO ORDERED.