**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**OXFORD CAPITAL SECURITIES, INC.,** Oxford Consolidated Corporation, James A. Sehn, Samuel O. Forson, Leonard C. Donner, and Guillermo P. Tolosa, a/k/a Willie Tolosa, Defendants.

**No. 92 Civ. 935 (WCC).**

United States District Court, S.D. New York.

May 21, 1992.

Richard H. Walker, Regional Adm'r, New York City (Edwin H. Nordlinger, Carmen J. Lawrence, Robert B. Blackburn, Amy C. Reich, Martin L. Feinberg and David A. Barnett, of counsel), for plaintiff S.E.C.

Howard D. Stave, Forest Hills, for defendant Leonard C. Donner.

Noah Lipman, New York City, for defendants Oxford Capital Securities, Inc., Oxford Consol. Corp., James A. Sehn, Samuel O. Forson and Guillermo P. Tolosa a/k/a Willie Tolosa.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This action was brought by the Securities and Exchange Commission (the "Commission") on February 6, 1992 against defendants Oxford Capital Securities, Inc. ("Oxford Capital"), Oxford Consolidated Corporation ("Oxford Consolidated"), James A. Sehn, Samuel O. Forson, Leonard C. Donner, and Guillermo P. Tolosa, charging violations of Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), (c), 77q(a)], Sections 10(b), 15(c)(1), and 17(a) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78j(b), 78*o*(c)(1), 78q(a)], and Commission Rules 10b–5, 15c1–2, and 17a–5 [17 C.F.R. §§ 240.10b–5, 240.15c1–2, 240.17a–5], in connection with defendants' alleged fraudulent offer and sale to investors of more than $2.0 million of unregistered debt securities. This action is presently before the Court on the Commission's motion for an order holding defendants in civil contempt of this Court's February 14, 1992 Order and imposing sanctions pursuant to Rule 70, Fed.R.Civ.P.,[1] the inherent powers of the Court, and Rule 43 of the Civil Rules of the United States District Court for the Southern District of New York.

**1.** Rule 70 provides in pertinent part:
 If a judgment directs a party to execute a conveyance of land or ... to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the

## BACKGROUND

On the same day the Commission filed its Complaint in this action, United States District Judge Kevin T. Duffy, sitting in Part 1, ordered, among other things, that defendants be temporarily restrained from violating the securities laws, that defendants' assets be frozen, and that each defendant provide the Commission with an accounting within three business days. On February 11, 1992, the day the accountings were due, defendants consented to Final Judgments of Permanent Injunction (the "Judgments"). On February 14, 1992, this Court signed the Judgments without modification. Among other things, the Judgments permanently enjoin defendants from violating the federal securities laws and continue the freeze of defendants' assets, but reserve the issues of disgorgement and civil penalties.

In addition, the Judgments require that each of the defendants provide an accounting. The accountings were to be served on the Commission and filed with the Court no later than February 19, 1992, and expressly require five distinct types of financial information:

1. All money, assets, funds, securities, and real or personal property currently held directly or indirectly by or for the benefit of any of the defendants, including but not limited to bank accounts, brokerage accounts, investments, business interests, and real and personal property wherever situated, describing each asset, its current location and amount;

2. All money, assets, funds, securities, and real or personal property received by any of the defendants, or for their direct or indirect benefit, in or at any time from January 1, 1989, to the date of the accounting, describing the source, amount, disposition and current location of each of the items listed;

disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party.... The court may also in proper cases adjudge the party in contempt.

3. All money, assets, funds, securities, and real or personal property of investors in the Oxford debt securities transferred to or for the benefit of any of the defendants from January 1, 1989, through the date of the accounting, and the disposition by the defendants of such assets, funds, securities, real or personal property;

4. The names, last known addresses, and account identifying information of all financial institutions, bailees, debtors, and other persons and entities that are currently holding any money, assets, funds, securities or real or personal property of the defendants; and

5. The names, last known addresses and telephone numbers of all investors in the Oxford debt securities, as well as, the amount and date of each investment and the amount(s) and date(s) of payment(s) of principal and/or interest to each investor by the defendants[.]

Defendants Sehn, Forson, Donner, and Tolosa provided the Commission with sworn statements, dated February 19, 1992, concerning their present financial status. Donner has also provided the Commission with information required pursuant to the third part of the accountings. In addition, defendants appear to have at least partially complied with the fifth part of the accountings—the Commission has received an investor list from defendants' counsel, with a supplement from Donner, dated April 10, 1992.

Now facing possible contempt citations, defendants do not dispute that they have failed to comply fully with the Order. *See* Declaration in Response of Noah Lipman, dated April 24, 1992, at ¶¶ 1, 2; Aff. of Leonard C. Donner, dated April 27, 1992, at 1. Instead, they offer the Court several explanations for the insufficiency of their accountings: (1) the officers of Oxford Capital and Oxford Consolidated are concerned that their production and signature of the accountings may be used against them in a criminal prosecution to establish their use of the corporations as corrupt criminal enterprises; (2) Sehn, Forson, and Tolosa now assert their Fifth Amendment

privilege against self-incrimination in light of the criminal investigation conducted by the District Attorney's Office for the County of New York ("District Attorney") into the activities of individuals employed by and associated with Oxford Capital and its related entities; and (3) Donner, while not asserting his Fifth Amendment privilege, claims that despite his best efforts, he is unable to comply fully with the accounting.

## DISCUSSION

### Standard for Contempt

■ A court has inherent power to enforce compliance with its lawful orders through civil contempt. The instant Order is no less enforceable simply because it is part of a consent judgment. *Badgley v. Santacroce,* 800 F.2d 33, 38 (2d Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). A court may hold a party in civil contempt only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply. *See EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,* 753 F.2d 1172, 1178 (2d Cir.1985), *aff'd,* 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986); *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.) (per curiam), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981).

In the instant case, the elements for contempt are satisfied. First, the Judgments describe in detail and in five separate parts what information must be included in the accountings. Second, defendants have not complied with the terms of the Order, nor do they contend otherwise. Finally, defendants have not acted diligently in an attempt to accomplish what was ordered.

It is true that on October 11, 1991, investigators employed by the District Attorney executed a court-authorized search on a portion of the business premises of Oxford, recovering certain business records and computers. Decl. of Michael C. Miller, Assistant District Attorney, at ¶ 4. However, by November 22, 1991, defendants received an inventory of items seized by the District

Attorney and were granted access to all the items. Decl. of Miller, at ¶¶ 7, 8, 10 and Exhs. A, C. Notwithstanding this access, the commitments they made to provide the accountings, and the Order of this Court, only defendants Sehn and Tolosa visited the District Attorney's office to view the seized documents on March 19, 1992, one month after the accountings were due. *See id.* at ¶¶ 9, 13 and Exhs. B, E.

■ Donner argues that he should not be held in contempt since he has endeavored to obtain records necessary to prepare a complete accounting from the District Attorney, but that he has been informed by Assistant District Attorney Miller that the records are not presently available for his review. Donner Aff., dated May 14, 1992. A party may defend against a contempt by showing that compliance with the order is "factually impossible." *See United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). The defendant has a burden of production when raising this defense which "may be difficult to meet." *Badgley*, 800 F.2d at 36. As noted by the Second Circuit in *Badgley*, "[a] classic application of the factual impossibility defense arises when a court orders an individual to produce documents that are not in his possession or control." 800 F.2d at 37 (citing *Rylander, supra; Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 781 (9th Cir.1983)).

Donner's argument that it is "factually impossible" for him to comply with this Court's Order of February 14, 1992 is not convincing. His claim that the records necessary to complete the accounting are not available for his review is directly contradicted by the sworn statement of Assistant District Attorney Miller that the defendants have had access to the records since November 22, 1991. Moreover, Donner's asserted inability to comply with the Order lacks sufficient detail to permit the Court to assess the veracity of that claim—nowhere does Donner identify what records he needs to provide the accounting, the specific efforts he has made to obtain the records, and when they will be available.

Moreover, absent from his April 27 affidavit is any disclosure, pursuant to the second part of the accounting, with regard to the disposition of the $14,100 he apparently withdrew from his bank account on February 7, 1992, the day after his assets were frozen. *See* Feinberg Decl., dated April 17, 1992, at ¶ 21, and Exh. 6. Certainly, he is in no need of outside assistance to gather that information.

■ The remaining defendants, rather than suggesting that they have diligently attempted to comply with the Order, refuse to do so on the grounds that the information they have agreed to provide may be used against them in a criminal trial. Thus, they have attempted to invoke their Fifth Amendment privilege against self-incrimination at this time.

"It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony." *Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974) (citations omitted). That privilege, however, does not extend to artificial entities, such as corporations. *See, e.g., Braswell v. United States*, 487 U.S. 99, 102, 108 S.Ct. 2284, 2286–87, 101 L.Ed.2d 98 (1988). Despite this lack of privilege, Oxford Capital and Oxford Consolidated have refused to comply with the Court's Order because "the corporate officers are concerned that their signature upon such an accounting affidavit will be used by the District Attorney's Office to establish their use of the corporation as corrupt criminal enterprises." Lipman Decl. at ¶ 6. In effect, the corporate officers assert their own claim of privilege to prevent the corporations from producing. This they cannot do.

In *Braswell*, the Supreme Court held that a corporate custodian may not resist a subpoena for corporate records on the ground that his act of production would incriminate him in violation of the Fifth Amendment. 487 U.S. at 113, 108 S.Ct. at 2292–93. In so holding, the Court reiterated the observation it had previously

made in *Bellis* that " '[i]n view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations.' " *Braswell*, 487 U.S. at 116, 108 S.Ct. at 2294 (quoting *Bellis*, 417 U.S. at 90, 94 S.Ct. at 2184). Accordingly, the Court found that "[a]ny claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege." *Braswell*, 487 U.S. at 110, 108 S.Ct. at 2291; *see United States v. Kordel*, 397 U.S. 1, 8, 90 S.Ct. 763, 767, 25 L.Ed.2d 1 (1970) (corporation cannot avoid responding to interrogatories based on an individual's assertion of his Fifth Amendment privilege—"service of the interrogatories obliged the corporation to 'appoint an agent who could without fear of self-incrimination, furnish such requested information as was available to the corporation.' " (citations omitted)).

Such a rule does not leave the individual unprotected against prosecution—since the act of production is in the custodian's representative capacity instead of his individual capacity, "the Government ... may make no evidentiary use of the 'individual act' against the individual." *Braswell*, 487 U.S. at 117–18, 108 S.Ct. at 2295. Thus, *Braswell* requires that the signing of the accountings on behalf of Oxford Capital and Oxford Consolidated not be used against the corporate officers as individuals. Accordingly, Oxford Capital and Oxford Consolidated must comply fully with the terms of the Order and cannot hide behind the Fifth Amendment privilege of their officers.

2. Indeed, the Consent Judgment itself provides: Defendant [ ] further acknowledges that it has been informed and understands that Plaintiff Commission, at its sole and exclusive discretion, may refer or grant access to this matter,

Sehn's, Forson's, and Tolosa's position is equally unavailing. Although it is true that the individual defendants have a Fifth Amendment right to assert, by freely agreeing to the Consent Judgments, these defendants have waived their privilege. Defendants cannot raise a Fifth Amendment defense to production for the first time in a contempt proceeding. *Cf. United States v. Kirksey*, 631 F.Supp. 165, 169–70 (S.D.N.Y.1986) (defendant waived Fifth Amendment privilege and could not oppose on those grounds the summons enforcement order to which he had consented where he had been afforded "ample opportunity" to assert that defense); *United States v. Fein*, No. M–18–304, 1985 WL 254 (S.D.N.Y. Feb. 6, 1985) (defendant could not assert Fifth Amendment privilege at contempt proceeding where he failed to raise that defense at the enforcement hearing). Allowing defendants in the instant action to assert the privilege at this stage would be giving them the option to ignore the Judgments entered against them until such time as they could no longer escape the imposition of sanctions. *See Fein*, 1985 WL 254, at *1.

The individual defendants were fully aware of the District Attorney's criminal investigation, and even asserted their Fifth Amendment privilege in response to questions posed by the Commission in December 1991. Feinberg Decl., dated May 5, 1992, at ¶¶ 2, 3. Despite having invoked their rights previously, they freely consented to the entry of the Judgments, knowing that the information could be of interest to law enforcement personnel.[2] The Judgments were the product of negotiation—defendants could have sought to condition their execution of the Judgments upon an agreement by the Commission to insert a provision preserving their Fifth Amendment privileges. *See New York v. Salem Sanitary Carting Corp.*, 1989 WL 165596 at *3, *4, 1989 U.S.Dist. LEXIS 16354 at *9, *10 (E.D.N.Y. Nov., 1989) ("no individu-

or any information or evidence gathered in connection therewith or derived therefrom, to any person or entity having appropriate civil, administrative or criminal jurisdiction, if it has not already done so.

al shall be deemed to have waived his Fifth Amendment privilege against self-incrimination as a result of consenting to the entry of this Order, final Judgment and Consent Decree"). Of course, the Commission may not have agreed to such a condition, but defendants would then have had the option of refusing to execute the Judgments.[3]

In sum, the Court concludes that the elements of civil contempt are satisfied as to each of the defendants in this action. Sanctions, however, will not be imposed at this time, and defendants will be permitted 45 days in which to purge themselves of the contempt by complying with the terms of this Court's Order, dated February 14, 1992. Should defendants fail to comply within the given time period, the Court will impose appropriate sanctions against them.[4]

## CONCLUSION

For the foregoing reasons, the Commission's motion for an order holding defendants in contempt of this Court's February 14, 1992 Order is granted.

---

**3.** In addition, it is likely that the individual defendants have waived their Fifth Amendment privilege by providing partial accountings. "[W]here criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of details." *See Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951) (citations omitted).

**4.** The purpose of contempt sanctions is to "compel obedience to a lawful court order or to provide compensation to a complaining party." *New York State National Organization for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir.1989) (citing *United Mine Workers of America,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947)), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). In selecting contempt sanctions, a court must use the "least possible power adequate to the end proposed." *Spallone v. United States,* 493 U.S. 265, 110 S.Ct. 625, 632, 107 L.Ed.2d 644 (1990) (citations omitted). Before entry of a coercive remedy, the Court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about com-

pliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction...." *Dole Fresh Fruit Co. v. United Banana Co.,* 821 F.2d 106, 110 (2d Cir.1987). The ultimate consideration is whether the coercive sanction is reasonable in relation to the facts. *New York State National Organization for Women,* 886 F.2d at 1353.

In the instant action, the Commission seeks (1) the appointment of a Special Master to perform the accountings required by the February 14, 1992 Order at defendants' expense (2) an order directing that the funds currently held in an account in Oxford Consolidated's name at Chase Manhattan Bank be deposited into a court-approved escrow account, and (3) an order imposing a daily fine on defendants for each day they fail fully to cooperate with the Special Master.

The recommended sanction appears to be well-tailored to the circumstances of the case and will be considered by the Court in the event defendants fail to purge themselves of the contempt.