**In re DG ACQUISITION CORP., et al., Debtor.**

Bankruptcy Nos. 92–1492 (HSB) through 92–1496(HSB). Jointly Administered Misc. No. 96–401 (JHG).

United States Bankruptcy Court, S.D. New York.

April 21, 1997.

Gerald B. Lefcourt, P.C. by Gerald B. Lefcourt and Sheryl E. Reich, New York City, for Ivette Dabah.

Richard Ware Levitt, New York City, for Barbara Dabah.

Angel & Frankel by Joshua Angel and Leonard Gerson, New York City, for Yvette Dabah.

Pollack & Greene by Steven Kimelman and James Burke, New York City, for Renee Dabah.

Richards, Layton & Finger by Gregory V. Varallo and Russell C. Silberglied, Wilmington, DE, Tracy L. Klestadt & Associates by Tracy L. Klestadt, New York City, for DG Creditor Corp. as Trustee of the DG Creditor Trust.

---

## DECISION ON MOTION TO COMPEL PRODUCTION OF DOCUMENTS

JEFFRY H. GALLET, Bankruptcy Judge.

Trustee moves to compel the non-debtor spouses of four debtors[1] to produce documents pursuant to subpoena. The non-debtor spouses object claiming that production of the documents would be a violation of their Fifth Amendment right against self-incrimination. In response, the Trustee argues that the non-debtor spouses waived their Fifth Amendment privilege, or if the privilege was not waived, they do not have a valid Fifth Amendment "Act of Production" right.

I find that the non-debtor spouses did not waive their right against self-incrimination under the Fifth Amendment, and that production of the documents would be a violation of their right against self-incrimination.

### FACTS

On November 25, 1992, Morris Dabah, Haim Dabah, Ezra Dabah, Isaac Dabah and DG Acquisition Corp. (the "Debtors") filed a petition for reorganization under Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"). On October 26, 1993, the Delaware Court confirmed a Third Amended Joint Plan of Reorganization (the "Plan"). DG Creditor Corp. (the "Trustee") alleges to have discovered certain unscheduled assets belonging to the Debtors in September 1994. Accordingly, on February 15, 1995, under § 7.6(a) of the Plan,[2] the Trustee filed motion in the Delaware Court, pursuant to Bankruptcy Rule 2004, seeking authorization to examine the Debtors and their wives, Barbara Dabah, Ivette Dabah, Renee Dabah, and Yvette Dabah (the "Dabah Wives"), and to require them to produce certain documents. On March 9, 1995, after a contested hearing, the Delaware Court granted the Trustee's Rule 2004 motion (the "2004 Order"). The 2004 Order provided that the deposition of the Debtors should be taken before the depositions of the Dabah Wives. The 2004 Order set May 25, 1995 and June 20 or 21, 1995 as the dates for document production and witness examination, respectively, of the Dabah Wives.

On April 25, 1995, the Trustee issued the first of three subpoenas to the Dabah Wives, setting June 20 and 21, 1995 as the dates of deposition. Counsel to the Dabah Wives objected by letters dated May 8, May 10, and May 16, 1995. While the objections did not include Fifth Amendment grounds, counsel expressly did not waive any other defenses or objections. The Dabah Wives did not

---

1. The debtors are a father and his three sons.

2. Section 7.6(a) provides:
 In the event that any assets owned by the Debtors as of the Filing Date except those listed in the Schedules, are discovered during the five years following the Confirmation Date, such assets will be contributed to the DG Creditor Trust, or alternatively will be subject to the Bankruptcy Court's administration.

appear at the June 20 and 21 1995 depositions.

On November 21, 1995, the Trustee issued a second subpoena to the Dabah Wives, pursuant to the same 2004 Order. Service was only made upon Yvette Dabah and Barbara Dabah. By letter of December 4, 1995, counsel to the Dabah Wives objected. Again, he did not assert the Dabah Wives' Fifth Amendment privilege. On December 13, 1995, the Trustee issued another subpoena and served Ivette Dabah and Renee Dabah.

On January 4, 1996, the Dabah Wives moved, before me, to Quash the Subpoenas. On February 21, 1996, I denied the motion. I ordered the documents produced by March 15, 1996.

The Dabah Wives appealed. I granted a stay pending appeal. The appeal was dismissed because a discovery order is not an appealable order. *In re DG Acquisition Corp.,* 96 Civ. 3496 (S.D.N.Y. Sept. 4, 1996).

 Shortly thereafter, the Trustee gave notice that the depositions of the Dabah Wives were to occur on October 25, 28, and 29, 1996, and required them to produce documents by October 18, 1996. On October 4, 1996, counsel to the Dabah Wives requested a thirty-day extension from Trustee's local counsel.[3] The Trustee's local counsel granted the request. The extension set document production for December 4, 1996 and depositions for December 11, 12, and 13, 1996.

The Dabah Wives refused to produce documents on December 4, 1996. On December 6, 1996, the Trustee moved by order to show cause (the "Order to Show Cause") to hold the Dabah Wives in contempt. I signed the Order to Show Cause and ordered the Dabah Wives to respond by December 11, 1996, or, in the alternative, produce the subpoenaed documents for *In Camera* inspection.

On December 11, 1996, each of the Dabah Wives was separately deposed. During their respective depositions, each was asked to read and examine Schedule A of the subpoena. Each was then asked a series of questions:

(1) whether she made any effort to collect documents in response to the subpoena;

(2) whether she knew any of the documents listed in the subpoena to exist;

(3) whether she knew any of the documents listed in the subpoena *not* to exist;[4]

(4) whether she had a passport and traveled outside the United States;

(5) whether the production of documents listed in the subpoena would tend to be self-incriminating or incriminate someone else;

(6) whether she destroyed any of the documents listed in the subpoena;[5] and

(7) whether she would assert the Fifth Amendment privilege in response to each and every paragraph of Schedule A and asked [them] questions about each and every one.

In response, each refused to answer each question, and asserted her Fifth Amendment privilege against self-incrimination.[6]

---

3. The Trustee argues that counsel to the Dabah Wives admitted in his letter to the Trustee's local counsel that the Dabah Wives were in possession of the documents listed in the subpoenas. The text of the letter states: "My clients are in the process of gathering and reviewing documents with respect to the above referenced Notices. Additional time is needed to complete the process."

I do not find that this portion of the October 4th letter demonstrates that the Dabah Wives admitted possession of the subpoenaed documents. Generally, an individual's claim of privilege must be defeated if the "existence and location of the [documents] are a foregone conclusion and the [Dabah Wives] add[] little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *Fisher v. United States,* 425 U.S.

391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976). I find this letter to indicate that the Dabah Wives were merely searching for the documents requested. I further find that this letter from counsel to the Dabah Wives is insufficient to demonstrate that the location of the documents was a foregone conclusion.

4. Renee Dabah was not asked if any documents listed in the subpoena did not exist.

5. Neither Yvette Dabah nor Ivette Dabah were asked whether they destroyed any documents listed in the subpoena.

6. Trustee's Counsel stated:

I am prepared to proffer to the court in the form of a stipulation among counsel the following:

After the December 11 deposition, and in response to the Order to Show Cause, the Dabah Wives submitted documents for *In Camera* inspection. I have examined all of the documents submitted *In Camera*, heard *In Camera* argument, on the record (now sealed), and read the pleadings.

### DISCUSSION

 The Fifth Amendment of the United States Constitution [7] prohibits compelled self-incrimination. *See United States v. Doe*, 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984) (*citing Fisher v. United States*, 425 U.S. 391, 396, 96 S.Ct. 1569, 1573–74, 48 L.Ed.2d 39 (1976)). If the creation of documents or records is voluntary, the element of compulsion does not exist and, therefore, the contents of such documents or records are not privileged. *Id.* However, while the contents of certain documents or records may not be privileged, "the act of producing them may be." *Id.* at 612, 104 S.Ct. at 1242; *see Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974) ("It has long been established ... that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony."). Indeed, "[t]he act of producing evidence in response to a subpoena ... has communicative aspects of its own, wholly aside from the contents of the papers produced." *Fisher*, 425 U.S. at 410, 96 S.Ct. at 1581. The right against self-incrimination may be asserted in any civil, criminal, or administrative proceedings. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). *See In re Hulon*, 92 B.R. 670 (Bankr.N.D.Tex.1988) (applying Fifth Amendment privilege in bankruptcy context).

### I. Waiver

The Trustee asserts that the Dabah Wives waived any Fifth Amendment privilege by failing to assert it before the December 11, 1996 depositions. They argue that the Dabah Wives' assertion of the Fifth Amendment privilege is barred because it is untimely and by *res judicata*.

 A waiver of the Fifth Amendment privilege against self-incrimination may be inferred from a witness' course of conduct or prior statements concerning the subject matter of the case. U.S. Const. amend. V.; *In re Donald Sheldon & Co.*, 193 B.R. 152, 162 (Bankr.S.D.N.Y.1996). The court need not look into whether the witness was aware of the privilege and chose to waive it consciously. *In re Donald Sheldon & Co.*, 193 B.R. at 162. However, a waiver of such a fundamental constitutional guarantee is not to be lightly inferred. *Emspak v. United States*, 349 U.S. 190, 196, 75 S.Ct. 687, 691, 99 L.Ed. 997 (1955); *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir.1981) (" 'testimonial waiver' is not to be lightly inferred."); *In re Donald Sheldon & Co.*, 193 B.R. at 162. Indeed, courts are to "indulge every reasonable presumption against finding a testimonial waiver." *Harris*, 667 F.2d at 287 (*citing Emspak*, 349 U.S. at 198, 75 S.Ct. at 692; *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318–19 (2d Cir.1979)). However, it is also true that a Fifth Amendment claim of privilege is deemed waived unless it is invoked. *See Maness v. Meyers*, 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574 (1975); *Rogers v. United States*, 340 U.S. 367, 370–71, 71 S.Ct. 438, 440–41, 95 L.Ed. 344 (1951).

In *O'Henry's Film Works, Inc.*, the Second Circuit stated that a "witness who fails to invoke the Fifth Amendment *against questions* as to which he could have claimed it is deemed to have waived his privilege respecting all questions on the same subject mat-

---

That in those depositions, each and every question regarding the document Subpoenas, including questions such as whether or not the documents exist, whether or not the documents were destroyed, whether or not the witness believes the documents would incriminate her or someone else, that with respect to all of those questions about the documents, the Fifth Amendment/Spousal privileges, in one or another form, were asserted.
Tr. December 11, 1996, at 11–12.

**7.** The Fifth Amendment to the United States Constitution provides that "no person ... shall be compelled in any criminal case to be witness against himself...." U.S. Const. amend. V.

ter." *O'Henry's Film Works, Inc.*, 598 F.2d at 317 (*citing Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951)) (emphasis added). The Dabah Wives were first asked direct questions at depositions on December 11, 1996, which were ordered by this court. In response to each question, each invoked her Fifth Amendment right against self-incrimination. The Dabah Wives did not have the opportunity to answer direct questions before the December 11, 1996 depositions.

The Trustee argues, however, that the Dabah Wives are time-barred from asserting their Fifth Amendment privilege under Fed. R.Civ.Proc. § 45(c)(2)(B).[8] Indeed, the Trustee calculates that twenty months have passed since it issued its first subpoena against the Dabah Wives and their invocation of the Fifth Amendment.

■ Such a statement of facts is misleading. It appears that Counsel to the Dabah Wives made written objections in response to each subpoena issued by the Trustee within the fourteen-day period required by Fed. R.Civ.Proc. § 45(c)(2)(B). It is true that none of these objections raised the Fifth Amendment. However, nothing in the language of Fed.R.Civ.Proc. § 45(c)(2)(B) indicates that once a party objects to a subpoena, she is limited to only those defenses raised at that time. I find no reason to assume that Congress intended Fed.R.Civ.Proc. § 45(c)(2)(B) to be a time-bar for the assertion of Fifth Amendment rights.

■ In coming to my conclusion, I must recognize that the assertion of the privilege against self-incrimination in a civil proceeding does not come without a price. If a party, or a witness deemed to be under a party's control, a status likely to be attributed the Dabah Wives, exercises the self-incrimination privilege, a negative inference may be drawn. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) ("the Fifth Amendment

does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them...."); *see also LiButti v. United States*, 107 F.3d 110 (2d Cir.1997) (allowed adverse inferences to be drawn against non-party witness who refused to answer questions under protection of the Fifth Amendment).

Furthermore, although one might wish it was not so, a person asserting her Fifth Amendment rights subjects herself to suspicion from prosecutors and casual observers alike. Only within the criminal justice system, if there, can it be said that invoking the right against self-incrimination is without pejorative effect.

■ The Trustee also argues that because the Dabah Wives failed to assert the privilege in their briefs or at the hearing with respect to the motion to quash, they are barred by the Doctrine of *res judicata* from asserting it now. The Trustee posits that because Fed.R.Civ.Proc. § 45(c)(3)(A)(iii) "provides that a party may make a motion to quash a subpoena, which 'shall' be granted if the subpoena 'requires disclosure of privileged or other protected matter and no exception or waiver applies,'" and the Dabah Wives raised the defense of Spousal Privilege in their motion to quash, they may not now raise the Fifth Amendment. However, the failure to assert the Fifth Amendment privilege in a motion to quash a subpoena does not necessarily preclude its assertion in subsequent proceedings. *In re Kave*, 760 F.2d 343, 353 n. 22 (1st Cir.1985). In *Kave*, the First Circuit upheld Kave's Fifth Amendment privilege over a claim that she waived it because she delayed too long. *Id.* The Court stated:

> [w]hile the preferable course would have been for Kave to have raised the [F]ifth [A]mendment argument in the motion to quash, Kave did raise the matter at the hearing before the master (albeit the mo-

---

**8.** The relevant portion of Fed.R.Civ.Proc. § 45(c)(2)(B) provides:

> [A] person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less

than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. Fed.R.Civ.Proc. § 45(c)(2)(B).

tion to quash was denied) at a time when the master could have easily reconsidered his ruling without occasioning undue delay. *Id.* While it would have been preferable for the Dabah Wives to raise their Fifth Amendment claim in the Motion to Quash, the proscription against self-incrimination is one of the most important principles of constitutional law. The Fifth Amendment is tamperproof, and there is no event that can shake it from its moorings. *In re Kave,* 760 F.2d 343, 353 (1st Cir.1985) (stating a state of war could not alter the spirit of the Fifth Amendment) (*citing United States v. L. Cohen Grocery, Co.,* 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 (1921)).

Moreover, the Trustee suggests that the Dabah Wives may not raise a Fifth Amendment objection for the first time in defense of a contempt motion. *SEC v. Oxford Capital Sec., Inc.,* 794 F.Supp. 104 (S.D.N.Y.1992); *United States v. Kirksey,* 631 F.Supp. 165 (S.D.N.Y.1986); *United States v. Fein,* 1985 WL 254 (S.D.N.Y. Feb. 6, 1985). This is true where those subject to subpoenas have had opportunity to testify or be heard to invoke the privilege. *See Oxford Capital Sec., Inc.,* 794 F.Supp. at 108 (Defendants waived Fifth Amendment privilege where they had once asserted the privilege in response to questions from the Securities & Exchange Commission, then entered into consent judgment with them); *Kirksey,* 631 F.Supp. at 169 (Court found that Kirksey could have evoked Fifth Amendment privilege when he appeared pro se to seek an adjournment, or through his attorney at an enforcement hearing where he consented to entry of an enforcement order); *Fein,* 1985 WL 254, at *1 (Fifth Amendment privilege deemed waived where defendant, pursuant to summons, failed to appear at IRS examination, failed to appear or oppose government's show cause hearing, failed to appeal court's granting government's motion, then evoked Fifth Amendment at IRS examination). It is indeed true that "[a] witness who fails to invoke the Fifth Amendment against questions as to which he could have claimed it is deemed to have waived his privilege respecting all questions on the same subject matter." *O'Henry's*

*Film Works, Inc.,* 598 F.2d at 317 (*citing Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951)). However, the December 11, 1996 deposition was the first opportunity for the Dabah Wives to assert the Fifth Amendment privilege in response to questions and they did so. Accordingly, I find that the Dabah Wives' Fifth Amendment claim is not barred by *res judicata.*

The Fifth Amendment constitutional guarantee of freedom from self-incrimination is so strong, all reasonable inferences against waiver must be presumed. *Klein v. Harris,* 667 F.2d 274, 287 (2d Cir.1981). The Trustee has not presented sufficient evidence to persuade me that the Dabah Wives waived their Fifth Amendment rights. Accordingly, because the Dabah Wives did not have the opportunity to answer questions before the December 11, 1996 depositions,[9] and then they refused to answer any questions by invoking the Fifth Amendment privilege against self-incrimination, I find that the Dabah Wives timely raised the Fifth Amendment privilege and did not waive it by failing to assert it in their Motion to Quash.

## II. Act of Production

The Trustee asserts that, even if the privilege was not waived, the contents of the documents are not shielded, because their existence is already known and the Dabah Wives failed to demonstrate that production would be a link in the chain of evidence tending to incriminate them.

The issue before me is whether four non-debtor spouses may raise the Fifth Amendment privilege against self-incrimination, under the Act or Production Doctrine, in a bankruptcy context, where the Trustee subpoenas documents and there are no criminal charges pending against either the debtor husbands or the non-debtor spouses? I hold that they may.

■■■ The Supreme Court has recognized that while the contents of a document may not be privileged, the act of production of subpoenaed documents may be considered testimony and, thus, protected under the

---

**9.** The examinations took place in the courthouse and were under my supervision.

Fifth Amendment. *See United States v. Doe,* 465 U.S. 605, 612, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984); *see also Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1580–81, 48 L.Ed.2d 39 (1976). The Court wrote that:

> A ... subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect. As we noted in *Fisher*:
>
>> Compliance with the subpoena tacitly concedes the existence of papers demanded and *their possession or control* by the [holder]. It also would indicate the [holder's] belief that the papers are those described in the subpoena. The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the [holder] are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases of classes thereof.

*Doe,* 465 U.S. at 612–13, 104 S.Ct. at 1242 (emphasis added) (*quoting Fisher,* 425 U.S. at 410, 96 S.Ct. at 1581).[10] Mere assertion of the act of production privilege is insufficient. The Dabah Wives must demonstrate that the potential for self-incrimination is real and substantial. *See Zicarelli v. New Jersey State Comm'n of Investigation,* 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *see also United States v. Edgerton,* 734 F.2d 913

(2d Cir.1984); *In re Katz,* 623 F.2d 122, 126–27 (2d Cir.1980) ("real and substantial risk").

■ The rule in the Second Circuit to determine whether individuals may invoke the "Act of Production" doctrine uses a two part test. *United States v. Fox,* 721 F.2d 32, 36 (2d Cir.1983). First, the court must determine whether the production of documents would be testimonial. *Id.* at 36.[11] Second, the subpoenaed party must demonstrate that the summoned documents are incriminating. *Id.* at 40.

A. Testimonial Nature of Document Production

■ To determine whether the act of production is testimonial in nature, two factors must be examined:

> [ (a) ] if the existence and location of the subpoenaed papers are known to the [trustee], then the [debtors' wives'] compelled production of those documents "tacitly concedes the existence of the papers demanded and their possession or control by the [debtors' wives']"; and [ (b) ] where the [debtors' wives'] production of documents may "implicitly authenticate" the documents and in so doing provide a link in the chain of incrimination.

*Id.* (internal citations omitted); *see In re Grand Jury Subpoena Duces Tecum Dated October 29, 1992,* 1 F.3d 87, 93 (2d Cir.1993), *cert. denied,* 510 U.S. 1091, 114 S.Ct. 920, 127 L.Ed.2d 214 (1994).

1. Trustee's Awareness of the Existence of Certain Documents

■ "If the government can demonstrate with reasonable particularity that it knows of

---

10. While their appears to be no reported decision from the Southern District that enunciates a clear procedure under the principle in *Doe* that "[c]ompliance with the subpoena tacitly concedes the existence of papers demanded and *their possession or control* by the [holder]," *Doe,* 465 U.S. at 613, 104 S.Ct. at 1242 (emphasis added), in *United States v. Marcos,* 1989 WL 135256, *5 (S.D.N.Y. Oct. 31, 1989) the court used the following similar two part test:

> The defendant must demonstrate that "the testimonial implications of [her] production of the documents—i.e., with respect to her alleged representative capacity, the existence or authenticity of the documents, or [her] possession or control of them—might tend to incriminate [her]."

*Id.*

11. In explaining why production of subpoenaed documents is testimonial in nature, one commentator noted

> [w]hen a witness turns over documents in response to a subpoena, he tacitly says two things of potential significance. First he says: "I have these documents." Second, he says: "These seem to be the documents you want." Because a witness producing documents makes these testimonial communications, there is logic in the theory that they should be protected by the Fifth Amendment privilege.

Samuel A. Alito, Jr., *Documents and the Privilege Against Self-Incrimination,* 48 U.Pitt.L.Rev. 27, 45 (1986).

the existence and location of subpoenaed documents, no privilege to refuse production on the first ground exists." *In re Grand Jury Subpoena Duces Tecum Dated November 13, 1984,* 616 F.Supp. 1159, 1161 (E.D.N.Y.1985) (*quoting Fox,* 721 F.2d at 37). I have inspected the documents, *in camera,* and cross-referenced them to the Trustee's statement of accounts known to it. It appears that the Trustee is unaware of certain documents and accounts produced by the Dabah Wives. This satisfies the first prong of the Act of Production test.

However, there are also certain accounts and records that are known to the Trustee. They command further scrutiny.

### 2. Does Compliance with Trustee's Subpoena Demonstrate Control of the Documents

██ Although the Trustee is aware of the existence of certain documents held by the Dabah Wives, those documents may still qualify for Fifth Amendment protection if the second part of the "Testimonial" prong is met. *In re Grand Jury Subpoena Duces Tecum Dated November 13, 1984,* 616 F.Supp. at 1161. Turnover of those bank accounts and documents held by the Dabah Wives, and known to the trustee, would be an implicit authentication demonstrating the Dabah Wives' possession or control over the documents. Accordingly, those documents known to the Trustee also satisfy the first prong of the Act of Production privilege test.

Although the existence and location of the subpoenaed documents are known, [the Dabah Wives] may still refuse to produce them if by doing so [they] would "implicitly authenticate" them for the [trustee]. "Implicit authentication occurs when an individual who receives a summons demanding production of documents complies with the summons and thereby implicitly testifies that he owns or at least possesses the documents."

*In re Grand Jury Subpoena Duces Tecum Dated November 13, 1984,* 616 F.Supp. at 1161 (*quoting Fox,* 721 F.2d at 38). While neither Debtors nor their Wives have been charged with a crime, a real possibility that they may be charged exists. The Second Circuit has held that one need not be charged with a crime to raise the protections of the Fifth Amendment. In *United States v. Edgerton,* 734 F.2d 913 (2d Cir.1984) the court found that a witness "need not go beyond the threshold showing of potential incrimination—and be required to prove that the government will prosecute him—in order to be entitled to the privilege." *Id.* at 921; *see also Estate of Fisher v. C.I.R.,* 905 F.2d 645 (2d Cir.1990). However, should the Debtors be charged in the future, the fact that the Dabah Wives were in possession of incriminating documents may either limit their defense options (i.e., estop them from raising an innocent spouse defense), or place them in the position of an accessory or co-conspirator. If the government or one of its officials

> will one day be able to testify that he knows the documents in question belong to [the Dabah Wives] because [the Dabah Wives] produced them when asked, then by that very act of production [the Dabah Wives] will have made a self-incriminating testimonial admission. [The Dabah Wives'] act of production will provide a necessary link to incriminating evidence contained in the documents by removing the government's need to authenticate them by other means.

*In re Grand Jury Subpoena Duces Tecum Dated November 13, 1984,* 616 F.Supp. at 1161 (*quoting Fox,* 721 F.2d at 38). The Trustee in this instance stands in the shoes of the government. If he discovers illegal acts, he is statutorily obligated to report them to the United States Attorney. 18 U.S.C. § 3057.[12] Thus, there is no distinc-

---

12. The trustee, under 18 U.S.C. § 3057, has a duty to report criminal activity to the United States Attorney. That section provides:

 (a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under Chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has

been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

tion, in this setting, whether illegal acts are discovered by the Trustee or by the government itself.

After *in camera* review of the documents produced by the Dabah Wives, known and unknown to the Trustee, I find that to turn them over to the Trustee would be testimonial. Thus they satisfy the first prong of the Act of Production analysis.

## B. Incriminating Nature of the Documents

■■■■ The second prong of the Act of Production test requires a determination of whether the subpoenaed documents are potentially incriminating.[13] *United States v. Doe,* 465 U.S. 605, 612–13, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984) (quoting *Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1580–81, 48 L.Ed.2d 39 (1976)). The summoned documents need not prove a crime in its entirety, but need tend only show a link in the chain of evidence. *See Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The Fifth Amendment "protects a witness from providing oral or written testimony that would furnish a link in the chain of evidence needed from criminal prosecution and attaches even if that risk is remote, for it is the possibility, rather than the likelihood, of prosecution that controls." *In re ICS Cybernetics, Inc.,* 107 B.R. 821, 827 (Bankr.N.D.N.Y.1989). However, "[t]he Fifth Amendment does not protect against all compelled testimony, but only against that which is self-incriminatory." *In re Grand Jury Subpoena Duces Tecum Dated November 13, 1984,* 616 F.Supp. at 1162.

Having inspected the subpoenaed documents, I them to be potentially incriminating. Accordingly, I must find that the Dabah Wives have satisfied the second prong of the test.

(b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

18 U.S.C. § 3057.

## CONCLUSION

The Dabah wives have timely and appropriately raised their Fifth Amendment privilege against self-incrimination. They will not be compelled to turn over any of the subpoenaed documents to the Trustee.

SETTLE ORDER.

13. The Fifth Amendment privilege against self-incrimination "is designed to protect testimony of a party or non-party witness which might later tend to subject that person to criminal prosecution. The criminal prosecution does not have to be probable or imminent and the witness 'need only show a reasonable probability that his answer will be used against him.'" *In re Endres,* 103 B.R. 49, 53 (Bankr.N.D.N.Y.1989) (internal citations omitted).